Good afternoon, Your Honors. Gene Varavia from behalf of the appellant. Unless the court has a different preference, I would like to focus on the sentencing enhancement issue, which is whether it was proper to enhance my client's sentence with the California prior for violating Section 3.3a of the California Penal Code. That sounds good. I believe the court should conduct both categorical and modified categorical analysis by comparing the elements of the state prior to the corresponding elements of the federal predicate. Could you explain how scenarios applies in this context then? Scenarios does not apply in this particular case because scenarios was construed a different portion of the statute. Scenarios was dealing with a portion of the statute that talks about the prior convictions for sexual abuse, aggravated sexual abuse, and sexual abuse of a minor. We are dealing with the prior conviction fall into the category of production, transportation, possession, receipt, and there are several other crimes that deal with child pornography. The difference is you can take, I guess arguably, you can take the three sexual abuse crimes and you can kind of construe them as a generic crime of sexual abuse and say, you know, there is a generic definition of sexual abuse that we are going to adopt. In fact, the court in scenarios said that we are not going to use a federal definition. We are going to take the generic definition that was used in the immigration context. My research did not discover any alternative common sense definition of any of these crimes that you could adopt in a similar manner. Certainly not the ones that would evolve a crime that doesn't require the defendant to know whether the person used in the production of the material is actually under 18. I don't believe there is an alternative generic definition for these crimes. I think that is probably the strongest argument for not applying scenarios. I think, conversely, I think scenarios is the governance problem is the best argument. I'm sure counsel is going to argue that because in scenarios the court construed relating language, relating to language broadly, you should do the same thing in regards to the latter portion of the statute. And why shouldn't we? I'm sorry? Why shouldn't we? You don't have any cases to the contrary. Well, McGrath says that you should apply just a traditional, the Sixth Circuit case says that you should apply traditional Shepard-Taylor analysis. In fact, I believe that is the only case anywhere in any circuit, this circuit or otherwise, that construed the child pornography portion of that statute. And it said that you're going to apply, that they applied the traditional Shepard-Taylor analysis. And, in fact, they did reverse the imposition of the enhancement because the state prior didn't match element by element. The state prior was broader than the elements of the corresponding federal offense. So there is at least that case. And, in fact, there is a subsequent unpublished Sixth Circuit case holding the same. So the Sixth Circuit view is that you should apply an element by element analysis. Now, the Seventh Circuit also said that, but they said that also in relation to the sexual abuse portion of the statute. And, obviously, scenarios is a law of the circuit unless an unbound court says otherwise, at least as to that portion of the statute. I don't know if I answered your question or not. No, that's fine. Okay. One further point I wanted to make regarding the statutory language is that it's instructive to look at what the current language replaced. Prior to 1998, this statute allowed imposition of the enhancement so long as the state prior was for a crime of possession of child pornography. That's just that. It's a pretty generic definition. Similarly, until 2006, I believe that Section 2251E only required that the prior involve a sexual exploitation of children. Again, it's a very generic definition. And that was replaced by a much more specific definition that at least mirrors the crimes in the federal statute. So, I think the court would be hard-pressed to say that Congress intended to use a very broad generic definition that the government is advocating. And then, at the same time, they went from a generic definition to a much more specific definition. If Congress wanted to say that the prior applies so long as the prior crime is in any way related to the child pornography, it could have said so. I mean, all they had to do was slightly tweak the definition that they already had on the books. There would be no reason to use a much more specific definition. One other point that I wanted to make is that the government really hasn't proposed an alternative definition. They don't really say what that alternative generic definition is. Basically, if you look at the government's analysis, they're still kind of going along the elements of the corresponding federal statutes. You know, we have a dispute as to which federal statute applies, but they're still tailoring to the elements. All the government is asking you to do is overlook the fact that the California prior is broader than the corresponding federal crimes. I mean, I don't think there has been a dispute from the government that the California statute is broader than the federal statute. And the reason why that's important is because the consequences of application of the statute is to drastically increase punishment. You know, on the production side, it goes from 15 to 30 to 25 to 50. And I think that the current statutory language is scant evidence that Congress intended to increase punishment so dramatically, even if the prior doesn't match the corresponding federal crime. You know, California, you don't have to find that the person convicted of this crime, or they don't have to admit that they knew that the person involved in the production of the material is under 18. In terms of the statutory reference, though, it says, as you pointed out, relating to the offense. Right. So that's a little, and the scenario acknowledges that it's still broader than it has to have all of the elements, including knowledge. Well, I would respectfully disagree, because I think the relating to language, all that does, it's meant to cover for the difference in labels that various jurisdictions attach to various crimes. Because, you know, states sometimes use very broad generic names for crimes that involve corresponding conduct. And I think the relating language simply allows the court to target those state crimes that, even though they're not called, they're not referenced by the same labels as the federal crimes, but they still involved essentially the same conduct based on the elements of the crime. Or, you know, if you're applying a modified categorical analysis based on allowable documents. But it's not meant to, I don't believe that the statutory language was meant to allow a definition that's, that enhancement would apply so long as it's in some way relates to the federal crime. Because, again, Congress would have had no need to change the statute to the current form if this is what they wanted to do. If you agree with me that the language is at least ambiguous on this point, I want to talk a bit about legislative history. And unfortunately, I did not find legislative history until very late Friday night. And it was at that point too late to submit it either for the court consideration or to allow opposing counsel an opportunity to respond. So the only thing I would ask is, this is an important issue. I would respectfully request a leave to brief that issue. Because I believe it is, the legislative history is important. Because it will show that Congress really didn't consider that issue at all in regards to either statute. And if neither the statutory language nor the legislative history would provide you with a definitive answer, then I think the rule of lenity would require to interpret the statute favorable to my client's position. And unless the court has any other questions, I'm going to reserve the rest of my time. Thank you. Good afternoon, Your Honors. My name is Karen Meyer, and I represent the United States in this case. Defendant spends considerable time focused on the fact that the California prior section 311.38 doesn't require defendant to know the age of the minor, while section 2252A offenses do. But defendant glosses over the most relevant offense for purposes of this comparison, and that is the child pornography offense of production, which, in fact, does not require defendant to know the age of the minor as set forth in United States v. United States District Court for the Central District of California, this Court's decision from 1988. I'm sorry. What was the case? United States v. United States District Court for the Central District of California, 858 F. Second, 534. Now, in making this comparison, then, between the California prior and the Federal predicate offenses, we have to take a look at the conduct that was prohibited under California Penal Code Section 311.3a, and we see that the actions or the conduct that it prohibits includes knowingly developing, duplicating, printing, or exchanging. And when you then compare that to what is the statutory definition of producing under 18 U.S.C. Section 2256.3, all the conduct within California Penal Code 311.3a falls within that definition. And producing, as the government set forth in its papers, was actually used to define producing in addition to additional terms such as directing, manufacturing, issuing, publishing, or advertising. Now, when a definition does that, it uses the actual word to be defined in its definition and then adds additional terms. This suggests a very broad interpretation that incorporates into it the ordinary meaning into the statutory definition. So the conduct prescribed is not broader than the conduct encompassed by the Federal child pornography offenses. And to the extent that there were any doubt at all, I think McGratton reaffirms the Taylor-Shepard approach, that there's absolutely no reason to deviate from that approach. And that approach would have us take a look at the written plea agreement that the government submitted in this case, which defined California Penal Code Section 311.3a as, quote, depicting by photography sexual conduct by a person under age 14. That verb, depicting, certainly falls well within the definition of producing under 18 U.S.C. Section 2256.3. So is it your argument, then, you say that the Taylor, usual Taylor approach applies. Yes. Okay. And normally we would look to see whether or not the state crime contains the elements of the Federal definition. Yes. Okay. The Federal definition generally requires knowledge. Not the Federal definition of production, Your Honor. But not production. Correct. Under the case that I previously cited. All right. So. The age of the minor is not an element of the offense. All right. The defense, I believe, in his papers, it might have been the reply papers, identified that case as showing that the defendant has an affirmative defense. But the case law made very clear, or that case made very clear at jump site 538, that knowledge of the age of the minor was not an element of the offense. And even if defendant's prior state conviction does not qualify as a predicate offense, we need to keep in mind here that the standard of review is plain error. And for any error to be plain, it obviously, or it must have been clear on its face under current law. And there is no case from either this Court or the Supreme Court stating that California Penal Code 3113A does not relate to the Federal sentence enhancement statutes. So there could be no plain error. If I may, Your Honor, since this is the only opportunity I have to address the Court, also just make brief reference to the two other principal arguments that the defendant raises in his papers. And that has to do with the admission of the summary exhibits as inadmissible here. The government would like to point out that with respect to this particular argument, the defendant seems to confuse what would be considered user-created activity with what I'll call system-controlled or computer system data. And I would give you, give the Court two examples of that. For example, if you're typing on your computer and you hit a save button to save the Word document you're working on, obviously hitting the save button is user activity. But what process that computer undergoes or engages in in recording that act is simply not subject to human manipulation. It is just human data. I mean, sorry, system data, computer system data. And that — Can settings on the computer, though — I'm sorry, Your Honor. Can settings on the computer preprogrammed in result in different results when dates don't necessarily reflect the true date? Certainly, Your Honor. And I think what we have to do in this case is look at the actual testimony of the computer forensic expert, Bruce Pixley, that was admitted at trial. And if I could turn the Court's attention to Excerpt of Record 437, Mr. Pixley testified, as somebody downloads a file from someone using LimeWire, they're sending a request to that other computer. What I found is that LimeWire will store some of those requests that have been saved on the hard drive, not intentionally where a user can find them, but it can be recovered off the hard drive. So, again, this suggests a mechanical process that is not subject to human intervention or manipulation. And, in fact, the defense hasn't cited anything to suggest human manipulation other than a Wikipedia site, which falls outside the record of this case. Did the agent rely only on information coming from the computer and its contents? In the agent? Did the agent here, Pixley? Oh, I'm sorry. I'm sorry, did Pixley rely only on the contents of the computer itself? Yes, Your Honor. He only relied on the IP addresses that he was able to find as part of his forensic review of defendant's computer. That has to do with the left-hand column of those Exhibits 29 through 31. The right-hand column linking those IP addresses to a particular geographic location, again, based on Mr. Pixley's testimony, connotes a mechanical process. And if I may direct the Court's attention to Excerpt of Record 439 on that point, when Mr. Pixley testified, all IP addresses are, quote, routable. So there's a way to look up where does that IP address route to. And then Mr. Pixley goes on and further described what he did in terms of locating those IP addresses, stating, quote, so just as if you looked up an address on an envelope, there is really going the next step further. You're actually tracing that packet out to that IP address and finding out what path it's taking to get to its destination. So what we have is these IP addresses really came from other states here in America, and we also have foreign countries as well. And he could determine that also just by looking at the computer at issue, or was he looking at some independent registry? That was not off the computer. That was a trace request, as he talked about, sending a trace request, collecting that data that way. So this is just a summary exhibit. Aside from that, though — Why is that subject to human manipulation? Because, again, Your Honor, when you look at the language of Mr. Pixley's testimony, he's talking about tracing that IP address and finding out what path it's taking to get to its destination. There's nothing in there that indicates that it's anything other than a mechanical process. But even aside from that, again, with respect to this issue, we're on plain error review. And defendant states that in government counsel's closing — that would have been my closing, that I relied exclusively on Exhibits 29 through 31 to prove the interstate or foreign commerce element of those particular videos. But that simply is not true. If I may turn this Court's attention, I believe, to Excerpt of Record 605, I argued, quote, "'Bruce Pixley told you that the video PTHC 11YO girl has sex with mom, then with baby brother, Brazil kids, and Petonina 10Y came from all over the United States and the world, because that's how LimeWire works,' unquote. So thus, separate and apart from Exhibits 29 through 31, Mr. Pixley's testimony in and of itself was legally sufficient evidence for the jury to find that these videos had traveled in interstate and foreign commerce." Okay. Can I ask you a question about the — I believe it's the German officer's testimony, just to help me understand the record? Certainly. I think some briefing suggests that Lammers actually testified he saw the birth certificate. Where is that in the record? That is — that came from the Rule 807 pleading that the government filed the evening of the first day of trial, where, in a footnote, we identified that he had gone to the offices of the registry in the nearby town of Osnabrück, where the victim lived, and looked at the birth certificate of the victim depicted in the video that he — or the image that he looked at on the suspect's computer. So the jury didn't hear that. No, they did not hear that. But it was before the court prior to his testimony. Correct. They ended — both German officers ended up taking the stand on Thursday of that week. With respect to this issue, the only thing the government would like to point out is that defendant focuses considerable time on two decisions authored by this court, Sanchez-Lima from 1998 and Figge International, for the proposition that Rule 807 requires an additional element, and that is that the circumstances surrounding the making of any statement must be introduced or must be examined before any statement is introduced. And the government believes that that is incorrect. As you will recall, both in Sanchez-Lima and Figge International, the hearsay statements there did not fall within any of the exceptions to the hearsay rule under 803 or 804. In Sanchez-Lima, they were sworn videotaped testimony of illegal aliens who had been deported, who apparently were eyewitnesses to an altercation between the defendant and law enforcement officers. In Figge International, it had to do with complaint letters filed with the FTC about problems with a particular product. Neither of those hearsay statements fall within any of the parameters of Rule 803 or 804, but the court didn't say, therefore, they can't be admitted under 807. What this Court did is it undertook an independent analysis to see if those statements reflected circumstantial guarantees of trustworthiness. And, in fact, they did. In Sanchez-Lima, they said that it was under sworn testimony that was videotaped. And in Figge International, they said that they came for independent, unrelated sources that internally corroborated each other. But that certainly was not an additional requirement that this Court imposed upon the admission of evidence pursuant to Rule 807. It was simply the facts under which those cases arose. And, in fact, the language of Rule 807 specifically makes reference to the exceptions under Rule 803 and 804, which the government fully briefed in its papers how these statements qualify under those exceptions and reflect circumstantial guarantees of trustworthiness. If this Court has no further questions, then I will submit. Well, just a question on Detective Hirsch's testimony. Sure. Was it established in the record that the father and the children were unavailable? No, it was not, Your Honor. And, in fact, if, in fact, the government had proven that or gone that far, then the government submits that it would have just used those particular exceptions, 804b3 and 804b4, to introduce those statements into evidence. But Rule 807 is a residual catch-all exception. So separate and apart from proving the unavailability of a particular declarant, the statements themselves, because of the types of statements or the nature of statements that they are, reflect circumstantial guarantees of trustworthiness. So 807 is not so strictly bound by those particular requirements of 803 and 804. Thank you. Okay. No questions? Thank you. I have a couple of points. First of all, regarding counsel's argument concerning the predicate federal offense being production as opposed to the child pornography offenses. The government's brief cites not a single case where any of the activities that are covered by the California statutes were ever prosecuted as a production of child pornography. Because California's statute at issue basically prohibits making a copy or developing an existing negative or duplicating existing child pornography. There is not a case out there that I could find where the government cited that that's production. All they cited were cases where the term producing was considered in the context of the jurisdictional element of possession of child pornography. Whether the child pornography was produced in interstate commerce. And that's different for whether what the defendant did is actually child pornography original production. More importantly, in order for this categorical analysis to apply, the full range of the activities prohibited by the state statute must fall within the confines of the federal statute. I mean, I'm not quite sure which of the activities in the California statute counsel says falls in the federal production definition. But I would submit to you that neither making a copy nor printing something would be considered production under 2251E. And again, I'm unaware of any case that would say otherwise. So summary, the government's argument on the summary. Okay. What's your position as to where the information, the underlying information came from? Well, I'm sorry. Go ahead. Well, as far as the source of the countries attributed to the IP addresses, I would say that came from somewhere other than a computer. That's been my position in the briefing, and that remains my position. I'm not quite sure. What in the record clarifies that for us? Well, I believe Pixley's testimony. And I apologize, Your Honor, I cannot point you to a specific page at this point. But I believe it is discussed in my brief, and I think Pixley's testimony makes it clear that he was looking up something other than a computer, at least to determine what country this associates with. And I believe counsel said that he made a separate trace. And if he made a separate trace, that means that he's going to a source other than a computer. At least, you know, that was my reading of the record. So at least as to the countries, I was relatively certain that it came from somewhere other than the computer itself. In terms of the IP addresses, I think the IP addresses can be inputted manually, either by the user himself or by the administrator of the system. I did cite, you know, my citation for that was Wikipedia in large part because, you know, the defendant represented himself per se at trial. Talk about something that can be manipulated by humans. Right. But I think this is one context where you would expect to be manipulated by humans because nobody wants to go to jail for downloading child pornography. So if there is an audience out there for masking your IP address, I think that's, you know, that's a crowd that would want to hide and change your IP address. And my understanding is that it's something that you can just go online and do. And obviously, if the court wants further briefing on that particular aspect, I would be happy to submit it. But that's my understanding of that question. And finally, I had a brief comment on the residual exception to the hearsay rule. First of all, it's employed in exceptional circumstances. Government has never made an attempt to explain what exceptional circumstances justify relying on eight or seven rather than trying to rely on a traditional exception. Secondly, other than the fact that the subject of the statements being sort of a type of information that we sometimes admit as hearsay, there is no information that would allow you to draw a conclusion that these statements were reliable. As was pointed out in the briefing, we don't know whether the statements were made under oath, whether they were recorded, whether they were coerced. We know nothing about them. We don't even know, for example, whether the statement that the father supposedly made, that I made the video in Germany, why is that against his penal interest? It would be against his penal interest if he was prosecuted in the United States because he would be admitting that it was produced in interstate commerce. He's in Germany. I don't know what he's being prosecuted for. Maybe it's to his advantage to say that it's in Germany as opposed to the United States. I don't know. And that was the government's burden to at least lay out the prima facie case for the applicability of the residual hearsay exception. So even under plain error, I think the government has an obligation to lay out this bare minimum to satisfy the foundation for the residual exception. And I don't believe they have done that here. Okay. Thank you. Thank you, counsel. That will conclude our arguments for today. And we will adjourn. This court for this session stands adjourned. Thank you.
judges: Mueller, Noonan, Fisher